**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ALBUQUERQUE PUBLIC SCHOOLS,

    Plaintiff,

v.                                                        Civ. No. 18-1029 KK/LF

LINDSAY SLEDGE *et al.,*

    Defendants.

*Consolidated with*

LINDSAY SLEDGE *et al.*,

    Plaintiffs,

v.                                                        Civ. No. 18-1041 KK/LF

BOARD OF EDUCATION OF ALBUQUERQUE
PUBLIC SCHOOLS *et al.,*

    Defendants.

## MEMORANDUM OPINION AND ORDER
## REGARDING MOTIONS TO DISMISS

THIS MATTER is before the Court on: (1) Defendant Albuquerque Public Schools' Rule 12(b)(6) Motion for Partial Dismissal (Doc. 9)[1] ("APS' Motion to Dismiss"), filed December 14, 2018; and, (2) Defendants State of New Mexico and New Mexico Public Education Department's Motion to Dismiss Plaintiffs' Complaint to Enforce IDEA and the Prohibition Against Disability Discrimination in Public Education (Doc. 11) ("State Defendants' Motion to Dismiss"), filed

---

[1] References to "Doc." are to the docket in Civ. No. 18-1041 KK/LF (D.N.M.). References to "APS Doc." are to the docket in Civ. No. 18-1029 KK/LF (D.N.M.). By Order entered July 23, 2019, the Court consolidated these actions, however the dockets were not merged. (APS Doc. 25, Doc. 31.)

December 17, 2018. The Court, having reviewed the parties' submissions and the relevant law and being otherwise fully advised, FINDS that Defendants' motions are well taken and should be GRANTED.[2]

## I. Background and Procedural History

In their Complaint, Plaintiffs Lindsay Sledge and David Guba ("Parents") allege the following.[3] Parents' daughter P. S.-G. ("Student") has Dravet syndrome and as a result has had life-threatening seizures since infancy. (Doc. 1 at 1.) Her seizures are "unchecked by traditional pharmaceuticals"; however, the administration of cannabis daily as a preventative and at the onset of seizures has significantly reduced their frequency and length. (*Id.*) After the family moved to New Mexico in 2016, the New Mexico Department of Health designated Student as a qualified patient with a debilitating medical condition whose primary caregiver, Ms. Sledge ("Mother"), may administer cannabis to her pursuant to the Lynn and Erin Compassionate Use Act, N.M. Stat. Ann. §§ 26-2B-1 *et seq.* ("CUA").[4] (Doc. 1 at 2.) However, at the relevant times, the CUA prohibited the possession or use of cannabis on school grounds and did not extend a waiver of civil or criminal penalties to school staff who administered cannabis to qualified students. (*Id.*)

---

[2] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the undersigned to conduct dispositive proceedings and order the entry of final judgment. (APS Doc. 22, Doc. 21.)

[3] Because Defendants bring their motions pursuant to Federal Rule of Civil Procedure 12(b)(6), (Doc. 9 at 1; Doc. 11 at 1), the Court will decide them based on the allegations in Parents' Complaint, except as otherwise noted. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.").

[4] The CUA was amended on April 4, 2019. 2019 N.M. Laws Ch. 247 (S.B. 406) (approved Apr. 4, 2019). Citations to New Mexico Statutes Annotated § 26-2B-1 and subsequent sections are to the CUA in effect on October 7, 2018, when the administrative decision presently on appeal was issued. This Memorandum Opinion and Order does not address the April 4, 2019 amendments to the Act because they were not in effect at the relevant time and neither side has argued that they should apply to the motions before the Court.

When Student began attending preschool in March 2017, she was eligible to receive special education and related services from Defendant the Board of Education of Albuquerque Public Schools ("APS") due to her other health impairment of Dravet syndrome.[5] (*Id.* at 9.) After APS informed Parents that Student could not receive cannabis from school staff or on school grounds, Parents requested homebound services for Student, so that Mother could give Student cannabis in the event of a seizure.[6] (*Id.* at 2, 9.) However, APS rejected this request. (*Id.*) Instead, Student attended preschool at her neighborhood school and Mother remained on campus with her, at first in Student's classroom and later in the teacher's lounge or in Mother's car. (*Id.* at 9-10.) Mother accompanied Student to preschool for the rest of the 2016-2017 school year, the 2017 Extended School Year, and the 2017-18 school year. (*Id.* at 10.) For these time periods, "the plan was for [Mother] to run to [Student] if she began seizing, pick her up, carry her off campus and administer [cannabis] to stop the seizure." (*Id.*)

At an Individualized Education Plan ("IEP") meeting in the spring of 2018, Parents requested homebound services for Student for the 2018-2019 school year, when she would be attending kindergarten. (*Id.*) APS again rejected Parents' request. (*Id.*) On July 3, 2018, Parents submitted a request for an administrative due process hearing against APS and the New Mexico Public Education Department ("NMPED"), alleging that these entities had denied Student a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act

---

[5] A "child with a disability" eligible for services under the Individuals with Disabilities Education Act includes a child with "other health impairments . . . who, by reason thereof, needs special education and related services." 20 U.S.C. § 1401(3)(A).

[6] "The IDEA clearly contemplates that a state might be required to place a student in one-on-one homebound instruction to meet the student's needs, evidenced by its definition of 'special education' to include 'instruction conducted . . . in the home.'" *R.L. v. Miami-Dade Cty. Sch. Bd.*, 757 F.3d 1173, 1185 (11th Cir. 2014) (citing 20 U.S.C. § 1401(29)); *see also, e.g.,* 34 C.F.R. § 300.115 (listing "home instruction" as part of the "continuum of alternative placements" states must make available to disabled students to comply with the IDEA).

3

("IDEA"), 20 U.S.C. §§ 1400 *et seq.* (18-cv-1041, Doc. 1 at 6, 10.) The Due Process Hearing Officer ("DPHO") held a three-day hearing in August and September 2018 and issued a final written decision on October 7, 2018. (*Id.* at 7.) In her decision, the DPHO found that APS had denied Student a FAPE and ordered it to provide Student with homebound services and an abbreviated school schedule to allow Student to interact with peers. (*Id.* at 7, 10.) The DPHO also ordered a "limited remedy" against the NMPED. (*Id.* at 7.)

On November 6, 2018, APS filed a civil action in this Court appealing the DPHO's decision. *Albuquerque Pub. Schs. v. Sledge et al.*, Civ. No. 18-1029 KK/LF, Orig. Compl. for Review of IDEA Admin. Dec. (D.N.M. filed Nov. 6, 2018). Parents, in turn, filed this cross-appeal on November 8, 2018, seeking limited review and modification of the DPHO's decision to: (a) award Mother compensation for accompanying Student to preschool in 2017 and 2018; (b) find that the NMPED denied Student a FAPE; and, (c) award Parents their attorneys' fees and costs, all pursuant to the IDEA. (Doc. 1 at 16.) In addition, Parents allege that Defendants discriminated against Student on the basis of disability in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), and pursuant to this statute seek: (a) damages for Mother's wage loss and Student's pain and suffering; (b) a declaratory judgment that the CUA discriminates against children with disabilities; and, (c) an award of attorneys' fees and costs. (Doc. 1 at 3-4, 16-17.) On July 23, 2019, the Court entered an Order consolidating these cases. (Doc. 31, APS Doc. 25.)

Defendants filed their respective motions to dismiss on December 14 and 17, 2018. (Docs. 9, 11.) In its motion, APS seeks dismissal of Parents' IDEA claim challenging the adequacy of the remedy the DPHO ordered against APS, and of Parents' Section 504 claims against it. (Doc. 9 at 1.) The NMPED and the State of New Mexico ("State Defendants"), in turn, seek dismissal

4

of all of Parents' claims against them.[7]  (18-cv-1041, Doc. 11 at 1.)  For the following reasons, the Court finds that Defendants' motions are well-taken and should be granted.

## II.  Analysis

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "[F]or the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true," but it need not accept legal conclusions. *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quotations and citations omitted).

**A.     APS' Motion to Dismiss**

   1.     Parents' IDEA Claim Against APS

In its Motion to Dismiss, APS first seeks dismissal of Parents' claim challenging the adequacy of the remedy the DPHO ordered against it pursuant to the IDEA.  (Doc. 9 at 3-11; *see* Doc. 1 at 12.)  The IDEA "offers States federal funds to assist in educating children with disabilities." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, — U.S. —, 137 S. Ct. 988, 993 (2017). "In exchange for the funds, a State pledges to comply with a number of statutory

---

[7] Parents are mistaken that the State Defendants only seek dismissal of Parents' claims against the NMPED.  (Doc. 17 at 1.)  The State Defendants bring their motion on behalf of both the NMPED and the State of New Mexico, which entities they refer to "collectively," though somewhat confusingly, as "NMPED."  (Doc. 11 at 1; Doc. 23 at 2.)

conditions," including the provision of a FAPE to all eligible children residing in the State. *Id.*; *Sytsema ex rel. Sytsema v. Acad. Sch. Dist. No. 20*, 538 F.3d 1306, 1312 (10th Cir. 2008) ("[S]tates must provide all eligible students with a FAPE to receive federal funding under the IDEA."); *L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 974 (10th Cir. 2004) ("States must comply with the IDEA's requirements, including providing each disabled child with a FAPE . . . in order to receive funds under the statute."). An eligible child "acquires a substantive right to such an education once a State accepts the IDEA's financial assistance." *Fry v. Napoleon Cmty. Sch.*, — U.S. —, 137 S. Ct. 743, 749 (2017) (quotation marks omitted).

A FAPE includes both "special education" and "related services." *Endrew F.*, 137 S. Ct. at 994. "Special education" is "specially designed instruction . . . to meet the unique needs of a child with a disability," while "related services" are the support services "required to assist a child . . . to benefit from" that instruction. *Id.* A FAPE must provide a "substantively adequate program of education," which requirement is satisfied "if the child's IEP sets out an educational program that is reasonably calculated to enable the child to receive educational benefits." *Id.* at 995-96, 999. In addition, a FAPE must be free, that is, "provided at public expense, under public supervision and direction, and without charge." 20 U.S.C. § 1401(9)(A); *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 13 (1993). Finally, a FAPE must be offered in the least restrictive environment ("LRE") that is appropriate under the circumstances. *L.B. ex rel. K.B.*, 379 F.3d at 976.

The IDEA requires special education and related services to conform to the child's IEP, which "describe[s] the special education and related services that will be provided." *Endrew F.*, 137 S. Ct. at 994 (quotation marks and ellipses omitted).

> Parents and guardians play a significant role in the IEP process. They must be informed about and consent to evaluations of their child under the Act. Parents are included as members of IEP teams. They have the right to examine any records relating to their child, and to obtain an independent educational evaluation of their

6

child. They must be given written prior notice of any changes in an IEP, and be notified in writing of the procedural safeguards available to them under the Act[.]

*Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005) (citations, quotation marks, and brackets omitted).

When parents and educators disagree about the contents of a student's IEP, "parents may turn to dispute resolution procedures established by the IDEA," including "a due process hearing before a state or local educational agency."[8] *Endrew F.*, 137 S. Ct. at 994; *Sytsema*, 538 F.3d at 1312. The party seeking relief bears the burden of persuasion at the due process hearing. *Schaffer*, 546 U.S. at 51. "[A]t the conclusion of the administrative process, the losing party may seek redress in state or federal court." *Endrew F.*, 137 S. Ct. at 994 (citations and quotation marks omitted); *Sytsema*, 538 F.3d at 1312. If the court finds that a school district has violated the IDEA, it may grant such discretionary equitable relief as it deems appropriate. *Florence Cty. Sch. Dist. Four*, 510 U.S. at 12, 15–16.

In their cross appeal, Parents challenge the adequacy of the remedy the DPHO ordered against APS under the IDEA, claiming that the DPHO should have ordered APS to compensate Mother for accompanying Student to preschool in 2017 and 2018. (18-cv-1041, Doc. 1 at 3, 12-13, 15-16.) In its Motion to Dismiss, APS argues that the Court should dismiss this claim because Parents have failed to allege a violation of the IDEA and thus are not entitled to any remedy. (18-cv-1041, Doc. 9 at 3-11.) Specifically, APS argues that "[t]he IDEA does not require APS to either provide medical cannabis to [Student] or accommodate the use of same, and therefore [Parents'] claim fails to state a cause of action under the IDEA." (*Id.*)

---

[8] In New Mexico, the state educational agency, *i.e.*, the NMPED, holds due process hearings under the IDEA. *See* N.M. Admin. Code § 6.31.2.13(I).

7

In its Memorandum Opinion and Ordered entered August 8, 2019, this Court ruled that: (1) the IDEA does not require APS to administer or accommodate the administration of cannabis to Student; but, (2) Parents nevertheless met their burden of proving that APS failed to offer Student a FAPE for kindergarten and are entitled to relief under the IDEA. (APS Doc. 26, Doc. 32, hereinafter "Mem. Op. & Order".) However, the Court also ruled that Parents did *not* meet their burden of proving that APS denied Student a FAPE for preschool, *id.*, and this ruling forecloses Parents' claim that the DPHO should have ordered APS to compensate Mother for accompanying Student to school during her preschool years.

Initially, as explained at some length in its Memorandum and Opinion and Order, the Court agrees that the IDEA does not require APS to administer or accommodate the administration of cannabis to Student. *Id.* The administration of cannabis to Student has at all relevant times been unlawful under the federal Controlled Substances Act ("CSA"), 21 U.S.C. § 812(b)(1) & Sch. I; *Gonzales v. Raich*, 545 U.S. 1, 14 (2005), and it would be absurd to interpret the IDEA to require APS to commit or accommodate a federal crime to satisfy its obligation to provide Student with a FAPE.[9] *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 454 (1989). In addition, because the IDEA does not unambiguously require states to offer students services that violate federal law, the Spending Clause prevents the Court from reading this requirement into the statute. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 207 n.26 (1982); *Nielsen v. Preap*, — U.S. —, 139 S. Ct. 954, 971 (2019). Further, by operation of the CSA, the administration of cannabis cannot be "necessary to aid a [disabled] child to benefit from special education," and thus cannot be a related service that APS must provide as part of a FAPE under

---

[9] Moreover, the fact that the CUA permitted the administration of cannabis to Student does not alter the fact that the CSA has at all relevant times prohibited it, either because the CUA merely extended limited state law immunity to qualified patients and their caregivers, or because the CSA preempted it.

8

the IDEA. *Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883, 894 (1984). For these reasons, and as further explained in its Memorandum Opinion and Order, the Court reiterates that the IDEA does not obligate APS to administer or accommodate the administration of cannabis to Student as part of a FAPE.

Nevertheless, in its review of the administrative record this Court found that Parents met their burden of proving that APS failed to offer Student a FAPE for kindergarten. In particular, the Court found that, in Student's IEP for the 2018-2019 school year, APS proposed that Student should attend full-day kindergarten at her neighborhood school even though the school would lack any means of providing or obtaining timely treatment for her life-threatening seizures. The IEP in question rejected homebound services for Student, but did not indicate that Parents would either provide Student's school with prescription medication to treat her seizures or accompany Student to school to administer treatment themselves.[10] Thus, the IEP would have put Student's life or health at unreasonable risk; and, an educational program that puts a child's life or health at unreasonable risk is not "reasonably calculated to enable the child to receive educational benefits," and therefore not a FAPE. *Endrew F.*, 137 S. Ct. at 995-96; *Garcia v. Bd. of Educ. of Albuquerque Pub. Schs.*, 520 F.3d 1116, 1125 (10th Cir. 2008). In light of this ruling, APS' argument that Parents have failed to plead their entitlement to any remedy under the IDEA is doomed to failure.

However, in its Memorandum Opinion and Order, this Court ruled that Parents did *not* meet their burden of proving that APS denied Student a FAPE for preschool. Mem. Op. & Order, at 35. In particular, the Court found that

> the plan for Mother to accompany Student to preschool was not a requirement, but rather a choice Mother made to effectuate the IEP team's mutual preference for

---

[10] Student's kindergarten IEP did not indicate that Parents would either provide Student's school with prescription medication or accompany Student to school because Parents were unable or unwilling to take these steps, and by law APS could not require them to do so over their objection.

9

> Student to attend preschool and also accommodate her own preference for Student to have access to cannabis.[11]

*Id.* at 32. The Court has also ruled that

> an IEP remains free within the meaning of the IDEA notwithstanding a parent's voluntary decision to accompany her child to school to provide services the school cannot legally provide, to effectuate the parent's and the school district's mutual preference for the child to attend school in lieu of receiving homebound services.

*Id.* at 33. As the Court noted, this ruling "negates Parents' argument that Student's [preschool] IEP did not offer her a FAPE because it was not free." *Id.* at 32.

This ruling also defeats Parents' claim that the DPHO should have ordered APS to compensate Mother for accompanying Student to preschool. Courts may only "grant equitable relief to remedy a demonstrated violation of the IDEA," and such relief must be "within the range of reasonable choices in seeking to achieve [the] IDEA's purposes."[12] *Garcia,* 520 F.3d at 1128-29. With respect to Student's preschool years, the Court has already found that there was no demonstrated violation of the IDEA to remedy. Mem. Op. & Order at 32-35. With respect to Student's kindergarten year, the Court finds that, as a matter of law, compensating Mother for accompanying Student to *preschool* is outside the range of reasonable choices to remedy APS' failure to offer Student a FAPE for *kindergarten*, because the remedy would be wholly unrelated to the violation. For these reasons, the Court will grant APS' motion to dismiss Parents' claim challenging the adequacy of the remedy the DPHO ordered against APS under the IDEA.

   2.   Parents' Section 504 Claims Against APS

---

[11] In contrast, the Court found that a preponderance of record evidence demonstrated that Mother declined to accompany Student to full-day kindergarten to administer treatment in the event of a seizure. Mem. Op. & Order at 36.

[12] The IDEA's principle purpose is "to provide all disabled children with [a FAPE]." *Garcia*, 520 F.3d at 1129. Other purposes are "to assist states in implementing a system of early intervention services . . . , to ensure that educators and parents have the necessary tools to improve educational results for children with disabilities, and to assess, and ensure the effectiveness of, efforts to educate children with disabilities." *Id.* (quotation marks omitted).

APS also seeks dismissal of Parents' claims that it discriminated against Student based on her disability in violation of Section 504. The Supreme Court recently addressed the interplay of the IDEA and Section 504, noting that, "[i]mportant as the IDEA is for children with disabilities, it is not the only federal statute protecting their interests." *Fry*, 137 S. Ct. at 749. Section 504, for example, prohibits any federally funded program or activity from discriminating on the basis of disability, and "courts have interpreted § 504 as demanding certain reasonable modifications to existing practices in order to accommodate persons with disabilities." *Id.* (quotation marks omitted); *see* 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance.").[13] Section 504 "authorize[s] individuals to seek redress for violations of [its] substantive guarantees by bringing suits for injunctive relief or money damages." *Fry*, 137 S. Ct. at 750.

Further, the law expressly permits Parents to seek relief under both the IDEA and Section 504 for the same acts or failures to act.

> Nothing in the IDEA shall be construed to restrict or limit the rights, procedures, and remedies available under . . . [Section 504] . . . , except that before the filing of a civil action under [Section 504] seeking relief that is also available under the IDEA, the IDEA's administrative procedures shall be exhausted to the same extent as would be required had the action been brought under the IDEA.

*Id.* (quoting 20 U.S.C. § 1415(*l*)) (brackets omitted). Here, it is undisputed that Parents have exhausted their administrative remedies as to their IDEA and Section 504 claims.

Parents observe that "Section 504 prohibits students with disabilities from being excluded from services available to nondisabled students on the basis of disability," and claim that APS

---

[13] Defendants do not dispute that they are subject to Section 504 because they receive federal financial assistance. (*See generally* Docs. 9, 11.)

violated this prohibition because "nondisabled children across the state are administered medications by school staff at school," but Parents "were told [Student's] medication could not be stored at her APS school or administered by school staff."[14] (Doc. 16 at 11.) However, the Court finds that the facts Parents have alleged do not give rise to the inference that APS refused to store or administer Student's cannabis "on the basis of disability," *Fry*, 137 S. Ct. at 749, as required to state a claim under Section 504.

In their Complaint, Parents correctly allege that the then-applicable version of the CUA prohibited the storage or administration of cannabis by school staff or on school grounds.[15] (Doc. 1 at 2, 4, 9, 11, 13-14); *see* N.M. Stat. Ann. §§ 26-2B-4, 26-2B-5(A)(3)(b). Thus, by Parents' own admission – and in conformity with federal law – APS refused to allow its personnel to store Student's cannabis on school grounds or administer it to her, not because of Student's disability, but rather because the storage and administration of cannabis was illegal. Critically, Parents do not allege that APS administered cannabis to nondisabled students or stored cannabis for them; nor do they allege that APS refused to administer legal medications to Student or store legal medications for her. In short, Parents' allegations that APS discriminated against Student on the basis of disability amount to no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and "do not count as well-pleaded facts."

---

[14] Parents acknowledge that their Section 504 claims were "not precisely stated" in their Complaint and offer to "seek leave to amend, if needed." (Doc. 16 at 10.) However, in light of Parents' elucidation of their Section 504 claims in their response to APS' Motion to Dismiss, the Court finds that any such amendment would be futile for the reasons explained in this section. *See Anderson v. Suiters,* 499 F.3d 1228, 1238 (10th Cir.2007) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.") (internal quotation marks omitted).

[15] Parents refer to this as the "school child prohibition." (*See generally* Doc. 1.) Parents' label is both under- and over-inclusive. It is under-inclusive in that the relevant provisions of the CUA prohibited the possession or use of cannabis by everyone, not just school children, on school buses, in public vehicles, on school grounds, on school property, and in other "public place[s]." N.M. Stat. Ann. § 26-2B-5(A)(3). It is over-inclusive in that the relevant provisions of the CUA did not prohibit school children from possessing or using cannabis in compliance with the Act in locations other than those specifically listed. *See id.*

*Warnick*, 895 F.3d at 751. The Court will therefore grant APS' motion to dismiss Parents' Section 504 disability discrimination claims against it.

**B.      The State Defendants' Motion to Dismiss**

     1.      Parents' IDEA Claims Against the NMPED

Turning to the State Defendants' Motion to Dismiss, the Court will first address these Defendants' request for dismissal of Parents' IDEA claims against the NMPED.[16] In their Complaint, Parents allege that the DPHO should have found that the NMPED denied Student a FAPE and awarded a "complete equitable remedy" against it under the IDEA. (Doc. 1 at 3-4, 13-16.) According to Parents' Complaint, these claims are

> [b]ased on [the NMPED's] failure to act . . . to enforce the rights of students with disabilities in New Mexico and seek amendment to the [CUA] to allow children to receive medical cannabis during the school day from school staff to ensure that they can attend school and receive special education in their LRE.[17]

(Doc. 1 at 15.) In their Motion to Dismiss, the State Defendants argue that Parents fail to state a claim against the NMPED under the IDEA because the NMPED has no obligation to seek amendment to the CUA, and also because such an amendment would be futile. (Doc. 11 at 1, 4-7.)

The Court agrees that there is simply no provision in the IDEA that can be reasonably interpreted to obligate the NMPED to seek amendment of a state statute such as the CUA to allow school personnel to administer cannabis to qualified students on school grounds. Parents argue

---

[16] Parents assert IDEA claims against the NMPED but not against the State of New Mexico. (Doc. 1 at 3-4, 13-16.)

[17] Parents do not appear to claim that the State Defendants should have provided special education and related services to Student directly, (*see generally* Doc. 1), nor would such a claim be viable. Parents' Complaint contains no allegation that the State Defendants were directly involved in the formulation or provision of Student's IEPs, (*id.*); and, the Tenth Circuit has held that in absence of unnecessary and excessive delay a state educational agency is not required to provide services to a student directly where the local educational agency has failed to do so. *Chavez ex rel. M.C. v. N.M. Pub. Educ. Dep't*, 621 F.3d 1275, 1290 (10th Cir. 2010).

that such an obligation arises from the IDEA's requirement that the NMPED "ha[ve] in effect policies and procedures to ensure that . . . [a FAPE] is available to all children with disabilities residing in the State." 20 U.S.C. § 1412(a)(1)(A); (Doc. 17 at 5-6.) However, the IDEA cannot reasonably be interpreted to require a state educational agency to pursue legislative amendments of any kind, much less a legislative amendment permitting schools to commit a federal crime. To interpret the IDEA in such a manner would be patently absurd.

> Frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act.

*Pub. Citizen*, 491 U.S. at 454.

Moreover, Congress passed the IDEA pursuant to its spending power,[18] *Arlington Central School District Board of Education v. Murphy*, 548 U.S. 291, 295 (2006); *Chavez ex rel. M.C. v. New Mexico Public Education Department*, 621 F.3d 1277, 1290 (10th Cir. 2010), and

> [t]he legitimacy of Congress' power to legislate under the spending power . . . rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.' ... Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously.

*Rowley*, 458 U.S. at 207 n.26 (citing *Pennhurst State School v. Halderman*, 451 U.S. 1, 17 (1981)). However, the IDEA does not unambiguously require state educational agencies to pursue legislative amendments in general, or legislative amendments allowing schools to violate federal law in particular. Thus, to read this requirement into the IDEA would raise a serious doubt about the statute's constitutionality, while construing the statute to exclude such a requirement would fairly avoid the question. *See, e.g., Nielsen*, 139 S. Ct. at 971 ("[W]hen a serious doubt is raised

---

[18] The Spending Clause of the United States Constitution provides that "Congress shall have Power . . . to pay the Debts and provide for the . . . general Welfare of the United States." U.S. Const. art. I, § 8, cl. 1.

14

about the constitutionality of an act of Congress, [the] Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.") (quotation marks and ellipses omitted). For these reasons, the Court finds that Parents have failed to state a claim against the NMPED under the IDEA.[19]

2. Parents' Section 504 Claims Against the State Defendants

Parents also assert that the State Defendants discriminated against Student on the basis of disability in violation of Section 504 by prohibiting her from receiving cannabis from school personnel or on school grounds pursuant to the CUA.[20] (Doc. 1 at 3-4, 13-16.) Parents further seek a declaration that the CUA in effect at the relevant time illegally discriminated against Student on the same basis. (*Id.*) In support of these claims, Parents again allege that the State Defendants should have sought amendment of the CUA to allow qualified students to receive cannabis from school staff during the school day. (*Id.* at 15; Doc. 17 at 6.) However, this allegation fails to state a claim against the State Defendants under Section 504.

As a matter of law, the Court finds that the State Defendants' alleged prohibition of the administration of cannabis by school staff on school grounds, and their alleged failure to seek amendment of the CUA, were not based on Student's disability as required to state a claim under Section 504. *Fry*, 137 S. Ct. at 749; 29 U.S.C. § 794(a). Rather, the State Defendants' alleged acts and failures to act applied to disabled and nondisabled individuals alike and were based on

---

[19] Because it finds that the NMPED has no obligation to seek amendment to the CUA and will dismiss Parents' IDEA claims against the NMPED on this basis, the Court need not address the State Defendants' futility argument.

[20] In their Complaint, Parents allege that the State Defendants discriminated against not just Student, but rather all "school children who are qualified patients under the [CUA]." (Doc. 1 at 4.) However, Parents have made no attempt to comply with the requirements and procedures for bringing a class action, and the Court therefore declines to treat this matter as one, or to consider any claims Parents have asserted on behalf of anyone other than themselves and their child. *See generally* Fed. R. Civ. P. 23 (setting forth requirements and procedures for bringing class action); *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011) ("[L]itigants generally cannot bring suit to vindicate the rights of others.").

the identity of the substance at issue, *i.e.*, cannabis, and the laws prohibiting its possession and use. 21 U.S.C. § 812(b)(1) & Sch. I; N.M. Stat. Ann. § 26-2B-5(A)(3); *Gonzales*, 545 U.S. at 14; *James v. City of Costa Mesa*, 700 F.3d 394, 396 (9th Cir. 2012); *Carlson v. Charter Commc'ns, LLC*, No. CV 16-86-H-SEH, 2017 WL 3473316, at *3 (D. Mont. Aug. 11, 2017), *aff'd*, 742 F. App'x 344 (9th Cir. 2018); *Krumm v. Holder*, No. 13-CV-0562 RB/SMV, 2014 WL 11497804, at *1 (D.N.M. Mar. 19, 2014), *aff'd,* 594 F. App'x 497 (10th Cir. 2014). Notably, Parents do not allege that the State Defendants permitted school staff to administer cannabis to nondisabled individuals on school grounds, nor do they allege that the State Defendants prohibited school staff from administering legal medications to Student or other disabled students on school grounds.

Furthermore, like the IDEA, Section 504 cannot be read to affirmatively require the State Defendants to permit, accommodate, or pursue legislation permitting or accommodating what the CSA specifically prohibits. *Cf. Garcia v. Tractor Supply Co.*, 154 F. Supp. 3d 1225, 1229–30 (D.N.M. 2016) (a state cannot "affirmatively require employers to accommodate what federal law specifically prohibits"). In this regard, the Court notes that, under Section 504, "the term 'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when a covered entity acts on the basis of such use." 29 U.S.C. § 705(20)(C)(i). In addition, Section 504 expressly permits local educational agencies to "take disciplinary action" against a student with a disability who "currently is engaging in the illegal use of drugs" to the same extent they would against a nondisabled student. 29 U.S.C. § 705(20)(C)(iv). Significantly, the statute defines the "illegal use of drugs" to mean the "use of drugs, the possession or distribution of which is unlawful under the [CSA]," 29 U.S.C. § 705(10)(B), and thus includes the use of cannabis. 21 U.S.C. § 812(b)(1) & Sch. I.

The Court will stop short of holding that Student, as a young child whose parent gives her cannabis to treat a life-threatening seizure disorder, is excluded from the protections of Section 504 or subject to school discipline because she is "currently engaging in the illegal use of drugs," 29 U.S.C. § 705(20)(C)(i), as the State Defendants seem to suggest. (Doc. 11 at 10-12.) However, the foregoing statutory provisions confirm that Section 504 does not require states to permit or accommodate the use of cannabis. Because the facts Parents have alleged do not give rise to the inference that the State Defendants acted or failed to act on the basis of Student's disability, the Court will grant the State Defendants' motion to dismiss Parents' Section 504 claims against them.

### III. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

1. Albuquerque Public Schools' Rule 12(b)(6) Motion for Partial Dismissal (Doc. 9) is GRANTED. Plaintiffs' claim challenging the adequacy of the remedy the DPHO ordered against APS pursuant to the IDEA, and Plaintiffs' claims against APS pursuant to Section 504 of the Rehabilitation Act, are hereby DISMISSED WITH PREJUDICE; and,

2. Defendants State of New Mexico and New Mexico Public Education Department's Motion to Dismiss Plaintiffs' Complaint to Enforce IDEA and the Prohibition Against Disability Discrimination in Public Education (Doc. 11) is GRANTED. Plaintiffs' claims against the State Defendants are hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent